CASE No. 2013-1637

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IN RE MARK T. DINSMORE AND DAVID J. CARUSO

Appeal from the United States Patent and Trademark Office, Patent Trial and
Appeal Board in Serial No. 12/137,662

## BRIEF OF APPELLANTS

Orlando Lopez
BURNS & LEVINSON LLP
125 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-3000
olopez@burnslev.com

Attorney for Appellants

November 1, 2013

Form 9

FORM 9.   Certificate of Interest

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

In re Mark T. Dinsmore and David J. Caruso v. _____

No. 2013-1637

### CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

appellant _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:
Thermo Scientific Portable Analytical Instruments Inc., wholly owned by Thermo Fisher Scientific Inc." dba Thermo Niton Analyzers LLC

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Thermo Scientific Portable Analytical Instruments Inc. dba Thermo Niton Analyzers LLC

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
Thermo Fisher Scientific Inc.

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Jerry Cohen, partner, Burns & Levinson LLP

Sept. 19, 2013
Date

Signature of counsel

Orlando Lopez
Printed name of counsel

Please Note: All questions must be answered
cc: _____

# TABLE OF CONTENTS

I.     STATEMENT OF RELATED CASES ........................................................... 1

II.    JURISDICTIONAL STATEMENT ............................................................. 1

III.   STATEMENT OF THE ISSUES.................................................................. 2

IV.   STATEMENT OF THE CASE..................................................................... 2

V.     STATEMENT OF THE FACTS................................................................... 3

VI.   SUMMARY OF THE ARGUMENT ........................................................... 6

VII.   STANDARD OF REVIEW ......................................................................... 7

VIII. ARGUMENT ............................................................................................. 8

      *A.*     An incorrect terminal disclaimer is an error that falls within the scope of *35 U.S.C. § 251*.................................................................................... 9

      B.     Allowing corrections through reissue of the error due to the incorrect terminal disclaimer is within the basic reason for permitting reissue 11

      C.     The reissue preserves what has been dedicated to the public and also preserves the public's protection against harassment by multiple infringement suits ................................................................................. 12

      D.     The present case can be distinguished from those cases where reissue has been denied since, in the existing cases where reissue has been denied, the patentee had already received at least some of the reward that the law intended to provide as the stimulus to promote the progress of the useful arts. ................................................................... 13

      E.     The solution suggested by the USPTO can not be ensured to provide Dinsmore and Caruso with an enforceable patent.............................. 16

CONCLUSION ...................................................................................................... 18

ADDENDUM ........................................................................................................ 19

# TABLE OF AUTHORITIES

**CASES**

*AsymmetRx, Inc. v. Biocare Medical, LLC*, 582 F.3d 1314, 1321
(Fed. Cir. 2009) ............................................................. 16

*CMI Corp. v. Lakeland Construction Co., Inc.,* 184 USPQ 721
(N.D. Ill. 1975) .............................................................. 16

*Ex parte Wood*, 22 U.S. (9 Wheat.) 603, 608 (1824)........................................... 11

*Grant v. Raymond,* 31 U.S. 218, 242 (1832)................................................... 11, 15

*In re Mead*, 581 F. 2d 251 (C.C.P.A. 1978) ................................................ 13

*In re Oda,* 443 F.2d 1200, 1206 (C.C.P.A. 1971) ................................................ 9

*In re Orita*, 550 F.2d 1277 (C.C.P.A. 1977) ................................................ 13, 14

*In re Serenkin*, 479 F.3d 1359, 1360 (Fed. Cir. 2007) ................................. 14, 15

*In re Van Ornum,* 686 F.2d 937, 944 (C.C.P.A. 1982) ................................. 12

*In re Yamazaki,* 702 F.3d 1327, 1333 (2012)................................................. 12, 14

*Lucas v. South Carolina Coastal Council*, 505 US 1003, 1035 (1992).............. 11

*Medrad, Inc v. Tyco Healthcare Group LP,* 466 F.3d 1047, 1050
(Fed. Cir. 2006) ............................................................. 8, 9

*Sandy MacGregor Co. v. Vaco Grip Co.,* 2 F.2d 655 (6th Cir. 1924)................. 12

*Wiav Solutions LLC v. Motorola*, 631 F.3d 1257, 1264-1265
(Fed. Cir. 2010) ............................................................. 16

**STATUTES**

28 U. S. C. *§1295 (a) (4) (A)* ................................................................. 1

*35 U. S. C. § 141* ...................................................................................... 1

*35 U. S. C. § 142* ...................................................................................... 1

*35 U. S. C. § 6(b)* ..................................................................................... 1

*35 U.S.C. § 251* (2011) ........................................................................... 9

Patent Act of 1836, Ch. 357, sec. 13, *5 Stat. 117* (1836) .............................. 11

**TREATISES**

CHISUM ON PATENTS, Vol. 3A, Ch. 9, § 9.04, p. 9-113 (2005) .............. 16

CORBIN ON CONTRACTS, Ch. 74, §1326, p. 1101

(One Volume Edition, 1952) ........................................................................ 10

E. Allan Farnsworth, CONTRACTS, 619-623 (Third Edition 1999) ............ 10

RESTATEMENT (SECOND) OF CONTRACTS § 266  (1979) ................... 10

## I.    STATEMENT OF RELATED CASES

There are no other related cases known to counsel. No other appeal in or from the same proceedings of the United States Patent and Trademark Office has previously been before this Court or any other court.

No other case, which will directly affect or be directly affected by this court decision in the pending appeal and which is pending in this Court or any other court, is known to counsel.

## II.    JURISDICTIONAL STATEMENT

This is an appeal, under *35 U. S. C. § 141*, from a final at first decision of the Patent Trial and Appeals Board (the Board) of the United States Patent and Trademark Office (USPTO) (A-1)[1], dated June 5, 2013, the Board having jurisdiction under *35 U. S. C. § 6(b)* over appeal from the Examiner's rejection. This appeal was timely filed (A-342), pursuant to *35 U. S. C. § 142,* on July 31, 2013.

This Court has jurisdiction under 28 U. S. C. *§1295 (a) (4) (A).*

---

[1] The Appendix is cited to as "A-[page]."

### III.    **STATEMENT OF THE ISSUES**

Is the filing, in response to an office action from the USPTO, of an incorrect

terminal disclaimer, which renders the resulting patent unenforceable upon being

entered, an error correctable by reissue under *35 U.S.C. § 251* if the reissue does

not alter the patent term and preserves the protection of the public?

### IV.    **STATEMENT OF THE CASE**

Mark T. Dinsmore and David J. Caruso (Appellants, hereinafter Dinsmore and

Caruso) appeal, under *35 U. S. C. § 141*, the decision of the Patent Trials and

Appeals Board (the Board) affirming the Examiner's rejection of claims 26-46 in

reissue application Serial Number 12/137,662 (A-3). Reissue application Serial

Number 12/137,662 seeks to reissue US Patent 7,236,568, issued on June 26, 2007

(A-2; A-5). In the reissue application, the original claims in US Patent 7,236,568,

after the Request for Continued Examination, were canceled and the original

claims and other pending claims were replaced by claims 26-46, which were

narrower in scope than the original claims and differ from the claims, which were

originally rejected under non-statutory obviousness double patenting (A-8; A-304).

The Examiner issued another Final Office Action; rejecting all claims alleging that

the application was based upon a defective reissue declaration because the error

relied upon to support, the reissue application was not an error upon which a

2

reissue can be based (A-9). Dinsmore and Caruso timely appealed to the Board of

Patent Appeals and Interferences (now the Patent Trial and Appeal Board) (A-10).

The Patent Trial and Appeal Board affirmed the decision of the Examiner (A-17).

Dinsmore and Caruso timely noticed this appeal (A-289).

## V.    **STATEMENT OF THE FACTS**

Reissue application Serial Number 12/137,662 was filed on June 12, 2008 seeking

reissue of U.S. Patent Number 7,236,568 (A-2; A-41). During prosecution of the

application that matured into U.S. Patent Number 7,236,568 (the '568 patent),

original application claims 1 and 18-20 (which issued as claims 1, 16, 17 and 21)

were rejected by the Examiner on the ground of non-statutory obviousness double

patenting (A-4, 5; A-7). In response to the rejection, Dinsmore and Caruso's

attorney filed an incorrect terminal disclaimer, in which the term of the patent

resulting from the application (the '568 patent) was disclaimed to the term of US

Patent No. 6,658,086 (the '086 patent), which was not commonly owned (A-6).

The incorrect terminal disclaimer rendered the patent resulting from the application

(the '568 patent) unenforceable (that is, inoperable) (A-14). When Dinsmore and

Caruso understood the effect of the incorrect terminal disclaimer, which rendered

the '568 patent unenforceable, the reissue application was filed with the aim of

3

replacing the incorrect terminal disclaimer with a correct terminal disclaimer that did not claim common ownership (A-7).

During prosecution of the reissue application, Dinsmore and Caruso canceled claims 1, 16, 17 and 21 (corresponding to original claims 1 and 18-20) in order to preserve the public's protection against harassment by multiple infringement suits (A- 119). It was the correspondence of original claims 1 and 18-20 to the '086 patent that prompted the terminal disclaimer (A-4, 5; A-7). Dinsmore and Caruso also filed the correct terminal disclaimer so that the portion of the patent term that had been dedicated to the public would continue to be dedicated to the public (A-119).

During prosecution of the reissue application, Dinsmore and Caruso concurrently filed a Petition for acceptance of the correct terminal disclaimer, followed by a Request for Reconsideration (A-8). In the Request for Reconsideration of the Petition, Dinsmore and Caruso detailed how filing the correct terminal disclaimer and canceling the claims granted as a result of the incorrect terminal disclaimer preserved what had been dedicated to the public and also preserved the public's protection against harassment by multiple infringement suits (A-123). In the decisions on the Petition and the Request for Reconsideration of the Petition, the USPTO stated that the only remedy was for Dinsmore and

Caruso to assign the '568 patent to the owners of the '086 patent (A-90; A-140) notwithstanding the fact that such an assignment would deny Dinsmore and Caruso the reward stipulated by law and the fact that such a remedy can not guarantee enforceability of the '568 patent. Dinsmore and Caruso have not accepted that remedy.

After the Request for Reconsideration was denied, the Examiner issued a Final Office Action (A-151; A-162). Dinsmore and Caruso filed a Request for Continued Examination, canceled all of the claims and filed new narrower claims so that the claims would not be based on claims that were originally rejected due to obviousness double patenting (A-8; A-304). (The claims presented with the Request for Continued Examination are shown in A-311 to A-317). During prosecution of the Request for Continued Examination, Dinsmore and Caruso also filed a correct terminal disclaimer (A-9).

The prosecution after Request for Continued Examination resulted in a Final Office Action rejecting the new narrower claims due to the error relied upon not being an error upon which reissue can be based (A-10). Dinsmore and Caruso timely appealed to the Board (A-10).

5

## VI.  SUMMARY OF THE ARGUMENT

Neither the Examiner nor the Board contested that the incorrect terminal disclaimer rendered the '568 patent unenforceable and therefore inoperative (A-2 through A-18). *Ex parte Dinsmore*, App. No. 2013-006879 (Pat. Tr. App. Bd June 5, 2013) (A-2 through A-18). The Board stated that the incorrect terminal disclaimer was akin to a contract. When considered as a contract in which the incorrect terminal disclaimer is offered in order to obtain allowance and enforceability of the resulting patent, the contract suffers from antecedent impossibility and is unenforceable. The incorrect terminal disclaimer is an error that renders the patent inoperable and, due to the error, claims 1, 16, 17 and 21 of the '568 patent were allowed. Dinsmore and Caruso claimed more than they were entitled to. The filing of the incorrect terminal disclaimer is an error that meets the requirements of the reissue statute, *35 U.S.C. 251*.

The reissue statute is based on securing for the patentee the reward that the law intended to provide in order to promote the progress of the useful arts. Allowing correction, through reissue, of the error due to the incorrect terminal disclaimer is consistent with the basis for the reissue statute.

Dinsmore and Caruso have crafted the reissue application so that the patent term is not changed and that which was dedicated to the public remains the public's

6

possession and the public is protected from harassment against multiple infringement suits by multiple assignees/owners.

The solution proposed by the USPTO would require assigning the '568 patent to the owners of US patent 6,658,086 and obtaining an exclusive license with a right to sue, at best a difficult task. Even after such a difficult task, no precedent has been provided for rendering enforceable, after issuance, a patent that was unenforceable on its face.

Since the filing of the incorrect terminal disclaimer is an error that meets the requirements of the reissue statute, allowing correction, through reissue, of the error due to the incorrect terminal disclaimer is consistent with the basis for the reissue statute, since the reissue preserves the term of the patent and the public's protection against harassment by multiple suits, and since reissue is the only solution that can ensure that Dinsmore and Caruso obtain the reward that the law intended to provide, we ask this Court to reverse the decision of the Patent Trial and Appeals Board and remand this matter back to the USPTO.

## VII.  **STANDARD OF REVIEW**

In the absence of disputed facts, as is the case in the present appeal, whether an error satisfies the requirements of *35 U.S.C. § 251* is an issue of law, which the

Court reviews *de novo*. *Medrad, Inc v. Tyco Healthcare Group LP,* 466 F.3d 1047, 1050 (Fed. Cir. 2006).

## VIII. <u>ARGUMENT</u>

The granting of a patent in exchange for disclosing to the public the details of the invention institutes the constitutional mandate to promote the progress of the useful arts. Reissue provides a process in which a patentee can correct an error that renders the patent inoperable or invalid and, through the correction, secures for the patentee the reward that the law intended to provide in exchange for disclosing to the public the details of the invention. The decision of the Board, affirming the Examiner's rejection stating that the filing of an incorrect terminal disclaimer, the error relied upon, was not an error upon which reissue can be based, deprives Dinsmore and Caruso of the reward that the law intended to provide and should be reversed.

As shown below, since filing an incorrect terminal disclaimer is an error that is within the scope of *35 U.S.C. § 251,* correcting that error by reissue is within the basic reason for the reissue statute, the reissue preserves the term of the patent and protects the public from harassment by multiple infringement suits, and reissue is the only solution that can ensure that Dinsmore and Caruso receive the reward that

8

law intended to provide, this Court should reverse the decision of the Board and remand this case back to the USPTO.

### A. An incorrect terminal disclaimer is an error that falls within the scope of *35 U.S.C. § 251*

The Reissue statute, *35 U.S.C. § 251*, a remedial statute that should be construed liberally, provides that a patentee can seek reissue if the patentee deems that, through an error, the patent is totally or partially inoperative or invalid due to claiming more or less than the patentee had a right to claim or due to a defective specification or drawing. *35 U.S.C. § 251* (2011); *Medrad, Inc v. Tyco Healthcare Group LP,* 466 F.3d 1047, 1051 (Fed. Cir. 2006). The incorrect terminal disclaimer renders the '568 patent unenforceable, and using the meaning of "inoperative" that the predecessor court used in *In re Oda*, "ineffective to protect the invention," the incorrect terminal disclaimer renders the '568 patent inoperative. *In re Oda,* 443 F.2d 1200, 1206 (C.C.P.A. 1971).

The incorrect terminal disclaimer is an error. The Board stated that the "terminal disclaimer is akin to a contract" (A-14). Considered as a contract to overcome a rejection and obtain an enforceable patent, the incorrect terminal disclaimer, in which the owner of the application that matured into the '568 patent agrees that the patent would be unenforceable unless it is commonly owned with US Patent No. 6,658,086, suffers from antecedent impossibility. CORBIN ON

9

CONTRACTS, Ch. 74, §1326, p. 1101 (One Volume Edition, 1952). A contract suffering from antecedent impossibility is unenforceable. RESTATEMENT (SECOND) OF CONTRACTS § 266 (1979). The modern designation of antecedent impossibility is either mutual mistake or unilateral mistake. E. Allan Farnsworth, CONTRACTS, 619-623 (Third Edition 1999). The fact that the '568 patent and the '086 patent are not now, nor have they ever been commonly owned, renders the terminal disclaimer, if considered as a contract to overcome a rejection and obtain an enforceable patent, unenforceable. Entering into an unenforceable contract that renders the resulting patent unenforceable is an error.

Dinsmore and Caruso's attorney provided the incorrect terminal disclaimer in response to the obviousness double patenting rejection of original application claims 1 and 18-20 (which issued as claims 1, 16, 17 and 21) and issued claims 1, 16, 17 and 21 were allowed due to the entering of the incorrect terminal disclaimer. In respect to issued claims 1, 16, 17 and 21, Dinsmore and Caruso claimed more than they were entitled to.

Since the '568 patent was rendered inoperative due to an error that resulted in Dinsmore and Caruso claiming more than they had a right to claim, the error, the incorrect terminal disclaimer, is an error that falls within the scope of *35 U.S.C. § 251.*

10

**B.** **Allowing corrections through reissue of the error due to the incorrect terminal disclaimer is within the basic reason for permitting reissue**

As stated by Chief Justice Marshall in *Grant v. Raymond*, a patent provides a reward to the inventors for the advantages derived by the public from the efforts of the inventors and the basis of this reward traces back to the constitutional mandate to promote the progress of the useful arts. *Grant v. Raymond,* 31 U.S. 218, 242 (1832). Preceding, and providing basis for, the codification of reissue in the Patent Act of 1836, the Court, in *Grant v. Raymond,* stated that reissue secured, for the patentee, the rewards that the law intended to provide. *Id. at 242*; Patent Act of 1836, Ch. 357, sec. 13, *5 Stat. 117* (1836). The reward that the law intended to provide also has property rights stemming from the grant of the patent and, as Justice Kennedy stated in the concurring opinion in *Lucas v. South Carolina*, has property rights stemming from the expectation of returns from the efforts that led to the patented invention. *Ex parte Wood*, 22 U.S. (9 Wheat.) 603, 608 (1824); *Lucas v. South Carolina Coastal Council*, 505 US 1003, 1035 (1992). Allowing correction, through the reissue, of the effect of the incorrect terminal disclaimer would secure for Dinsmore and Caruso the enforceability of the patent, the reward that the law intended to provide as a stimulus to promote the progress of the useful arts, which is the basis for reissue.

11

**C.**     **The reissue preserves what has been dedicated to the public and
also preserves the public's protection against harassment by
multiple infringement suits**

Correcting the filing of the incorrect Terminal Disclaimer by replacement of

the incorrect Terminal Disclaimer with a correct Terminal Disclaimer, as requested

in the reissue application (A-8), preserves the patent term, which cannot be

changed by reissue, and preserves that which has been dedicated to the public. *In

re Yamazaki,* 702 F.3d 1327, 1333 (2012). By canceling the claims that were

originally rejected due to obviousness double patenting (A-119; A-4), Dinsmore

and Caruso provided a reissue application that preserved the public's protection

against multiple suits for infringement of substantially the same invention. *In re

Van Ornum,* 686 F.2d 937, 944 (C.C.P.A. 1982) (citing *Sandy MacGregor Co. v.

Vaco Grip Co.,* 2 F.2d 655 (6th Cir. 1924)).

Furthermore, in order to ensure the public protection against multiple

infringement suits, Dinsmore and Caruso canceled the issued claims and presented,

in the reissue application, narrower claims (A-8; A-16).

Correction of the incorrect terminal disclaimer as detailed in Dinsmore and

Caruso's reissue application would preserve their rights dedicated to the public and

would preserve the public's protection against harassment by multiple infringement

suits by multiple assignees/owners, while following the basic reason for reissue,

securing, for the patentee, the rewards that the law intended to provide.

**D. The present case can be distinguished from those cases where reissue has been denied since, in the existing cases where reissue has been denied, the patentee had already received at least some of the reward that the law intended to provide as the stimulus to promote the progress of the useful arts.**

In the cases cited by the Board in order to find precedent for determining

that an error did not satisfy the requirements of the issue statute and for the denial

of reissue, the patentee had already obtained an enforceable patent and therefore

had obtained at least some of the reward that the law intended to provide as the

stimulus to promote the progress of the useful arts. In *Mead*, Mead had obtained

enforceable U.S. Patent 3,667,590 and submitted a reissue application for claims

that the examiner deemed to be directed to an independent invention distinct from

that claimed in the original patent. *In re Mead*, 581 F. 2d 251 (C.C.P.A. 1978).

Mead had already obtained an enforceable patent and the reissue was attempting to

obtain further patent protection.

In *Orita*, Orita had selected claims to prosecute in response to a restriction

requirement, the other claims were canceled and the application matured into

enforceable US Patent 3,442,908. *In re Orita*, 550 F.2d 1277 (C.C.P.A. 1977).

Orita did not traverse the restriction requirement and did not file a divisional

application before US Patent 3,442,908 issued. *Id*. at 1278-1279. Orita filed a

reissue application presenting the nonelected, previously canceled claims. *Id*. at

1278-1279. Orita had obtained an enforceable patent and the reissue was trying to

recover that which had been given away during prosecution in order to obtain

broader coverage.

In *Yamazaki*, Yamazaki filed a valid terminal disclaimer and filed a reissue

application in order to rescind the terminal disclaimer. *In re Yamazaki*, 702 F.3d

1327, 1328-1329 (Fed. Cir. 2012). Yamazaki obtained an enforceable patent and

filed the reissue application in an attempt to change the term of the patent. *Id*. at

1329.

In *Serenkin*, Serenkin's attorney submitted a PCT application, claiming

priority of a provisional application, and did not include the drawings. *In re

Serenkin*, 479 F.3d 1359, 1360 (Fed. Cir. 2007). The USPTO, as the US Receiving

Office (USRO), informed Serenkin's attorney that he/she had to decide within 15

days whether to retain the original filing date without the drawings or incorporate

drawings and accept a new filing date. *Id*. at 1360-1361. Serenkin's attorney

decided to accept the later filing date and give up priority of the provisional

application. *Id*. at 1361. Serenkin's attorney filed a US application as the national

phase application of the PCT application and that application issued as a US

patent. *Id*. at 1361. Serenkin, through new counsel, filed a reissue application in order to obtain the benefit of the priority of the provisional application. *Id*. at 1361. Serenkin had obtained an enforceable patent and filed the reissue application in an attempt to strengthen the enforceable patent by obtaining an earlier priority date.

In *Mead, Orita, Serenkin and Yamazaki*, the patentee had obtained an enforceable patent and had obtained a benefit in exchange for making the invention available to the public. In contrast, Dinsmore and Caruso, from the time that the incorrect terminal disclaimer was accepted by the USPTO, could not obtain an enforceable patent and did not receive the reward due to them for making the invention available to the public and promoting the progress of the useful arts. The present case can be distinguished from *Mead, Orita, Serenkin and Yamazaki* since *Mead, Orita, Serenkin and Yamazaki* were asserting during reissue an error, which occurred during prosecution, in order to obtain stronger or longer patent protection for an enforceable patent while Dinsmore and Caruso did not obtain an enforceable patent due to an error. As stated by the Court, in *Grant v. Raymond*, Dinsmore and Caruso should be allowed, through reissue, to obtain the reward that the law intended to provide as a stimulus to promote the progress of the useful arts. *Grant* at 242.

**E.     The solution suggested by the USPTO can not be ensured to provide Dinsmore and Caruso with an enforceable patent**

The USPTO, in response to Dinsmore and Caruso's petitions, suggested assigning the '568 patent to the owners of the '086 patent (A-90; A-140). In order to render the '568 patent enforceable by the assignment of the '568 patent to the owners of the '086 patent, the owners of the '086 patent would have to grant an exclusive license and a right to sue to the owners of the '568 patent so that the owners of the '568 patent would gain standing to sue. *Wiav Solutions LLC v. Motorola*, 631 F.3d 1257, 1264-1265 (Fed. Cir. 2010); *AsymmetRx, Inc. v. Biocare Medical, LLC*, 582 F.3d 1314, 1321 (Fed. Cir. 2009). Not only would the owners of the '568 patent be providing intellectual property as a gift, but the owners of the '568 patent would have to negotiate keeping most of the rights of the '568 patent.

However, there is no assurance or precedent for rendering enforceable, after issuance, a patent that was unenforceable on its face. The courts differ as to whether a terminal disclaimer, entered after issuance, can cure obviousness double patenting. CHISUM ON PATENTS, Vol. 3A, Ch. 9, § 9.04, p. 9-113 (2005). Some courts have not given weight to a terminal disclaimer entered after issuance. See *CMI Corp. v. Lakeland Construction Co., Inc.*, 184 USPQ 721  (N.D. Ill. 1975) . There is no assurance that a court would recognize as enforceable a patent that was unenforceable before an assignment.

16

If Dinsmore and Caruso were to follow the suggestion provided by the USPTO, they would be giving away intellectual property and still risk not obtaining the reward that the law intended to provide.

# CONCLUSION

The decision of the Board denies Dinsmore and Caruso the reward that the law intended to provide in exchange for disclosing to the public the details of their invention. Since filing an incorrect terminal disclaimer is an error that is within the scope of *35 U.S.C. § 251,* correcting that error by reissue is within the basic reason for the reissue statute, the reissue preserves the term of the patent and protects the public from harassment by multiple infringement suits, and reissue is the only solution that can ensure that Dinsmore and Caruso receive the reward that law intended to provide, this Court should reverse the decision of the Board and remand this case back to the USPTO.

Respectfully Submitted,
By: _____
Orlando Lopez
Attorney for Appellants, Mark T. Dinsmore and
David J. Caruso, as assignors and for Thermo
Scientific Portable Analytical Instruments Inc.,
the real party in interest

Orlando Lopez
BURNS & LEVINSON LLP
125 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-3000
olopez@burnslev.com

Dated: November 1, 2013

18

# ADDENDUM

Decision of the United States Patent and Trademark Office, Patent Trial and

Appeal Board in Serial No. 12/137,662                              A-2 through A-18

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* MARK T. DINSMORE and DAVID J. CARUSO

_____

Appeal 2013-006879
Application 12/137,662
Patent US 7,236,568 B2
Technology Center 2800

_____

Before ALLEN R. MACDONALD, ROBERT E. NAPPI, and
LINDA E. HORNER, *Administrative Patent Judges*.

HORNER, *Administrative Patent Judge*.


DECISION ON APPEAL


STATEMENT OF THE CASE

Mark T. Dinsmore and David J. Caruso (Appellants) seek our review
under 35 U.S.C. § 134 of the Examiner's decision rejecting claims 26-46[1],

_____

[1] Appellants' argument section of the brief lists claims 26-42 as being on
appeal, but the claims appendix and the table of contents also include claims

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

which are all of the pending claims. We have jurisdiction under 35 U.S.C.
§ 6(b).

We AFFIRM.

## THE INVENTION

Appellants' claimed invention relates to miniature X-ray sources.
US 7,236, 568 B2 ("the '568 patent"), col. 1, l. 15. Claims 26, 27, 40, 42,
43, and 46 are independent. Claim 26, reproduced below, is illustrative of
the subject matter on appeal.[2]

> 26.  An x-ray source comprising:
>
> an insulating tube having a cylindrical inside surface
> defining a cylindrical vacuum cavity;
>
> a cathode located near a first end of said insulating tube
> and adapted to be optically heated for emitting electrons; the
> cathode being configured to limit heat loss from the center
> thereof;
>
> an anode adapted for a voltage bias with respect to said
> cathode for accelerating electrons emitted from said cathode;
>
> an x-ray emitter target located near a second end of said
> insulating tube for impact by accelerated electrons; and
>
> a secondary emission reduction layer covering at least a
> portion of said inside surface and adapted to minimize charge
> build-up on said inside surface;

---

43-46. We understand Appellants to be appealing from the final rejection of
all the pending reissue claims 26-46.

[2] Appellants argue all the claims on appeal as a group. App. Br. 5-10. We
select claim 26 as representative. *See* 37 C.F.R. § 41.37(c)(1)(vii) (2011).

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

        said insulating tube being adapted to be weakly conductive by having a lower resistance layer located between said insulating tube and said secondary emission reduction layer;

        said insulating tube being adapted to be weakly conductive to support a uniform voltage gradient along said insulating tube and across said voltage bias between said cathode and said anode;

        wherein said insulating tube has a conductivity adapted to allow current flow along said insulating tube of approximately ten percent of electron current flow between said cathode and anode under a maximum voltage bias there between.

## THE REJECTION

Appellants seek review of the Examiner's rejection of claims 26-46 under 35 U.S.C. § 251 based on a defective oath as setting forth an error that is not correctable by reissue.

## ISSUE

In the reissue application on appeal Appellants canceled the original patent claims and presented new reissue claims 26-46, which contain an additional limitation not present in the original claims. App. Br. 3. Appellants assert that this additional limitation is "based on claims that were not rejected on the ground of non-statutory obviousness-type double patenting" during prosecution of the original patent. *Id.* As such, Appellants identify the error upon which the reissue is based as being that some of the original claims were allowed based on an ineffective, invalid terminal disclaimer, which renders the patent unenforceable. *Id.* at 5-6.

A-4

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

Appellants seek to replace the terminal disclaimer that was filed in the
original patent prosecution to overcome a double patenting rejection with a
substitute terminal disclaimer that disclaims the same term as in the original
patent but removes the requirement of common ownership. *Id.* at 7.

The Examiner determined that "[t]he voluntary filing of the terminal
disclaimer to overcome the obvious double patenting rejection is evidence
that the error is not correctible by reissue . . . ." Ans. 4.

The issue presented by this appeal is whether Appellants' voluntary
and intentional filing of a terminal disclaimer to overcome a non-statutory
obviousness-type double patenting rejection during prosecution of the
original patent is an "error" correctable by reissue under 35 U.S.C. § 251.[3]

FINDINGS OF FACT

We find that the following enumerated findings are supported by at
least a preponderance of the evidence.

*Prosecution History of Original Application 11/087,271*

1. During prosecution of Application 11/087,271 ("the '271
Appl."), which subsequently issued as the '568 patent, the
Examiner rejected original application claims 1 and 18-20 on
the ground of non-statutory obviousness-type double patenting

---

[3] This issue is similar to the issue decided by the Office in three petition
decisions in the reissue application on appeal. *See infra* Facts 10-15.
Because the Final Office Action from which this appeal is taken includes a
rejection of the pending reissue claims under 35 U.S.C. § 251, a rejection
from which appeal to the Board is proper, *see* 35 U.S.C. § 134, we decide in
this appeal the propriety of this rejection.

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

rejection in the prosecution of the original '271 Appl. (original

application claims 1 and 18-20, which issued as claims 1, 16,

17, and 21). Amendment and Response Under 37 CFR 1.111

dated October 27, 2009.

9. Appellants also filed a supplemental reissue declaration that

stated the original patent "to be wholly or partly inoperative or

invalid . . . by reason of the patentee claiming more or less than

he had the right to claim in the patent" and identified the error

on which the reissue is based as follows:

> Original [application] claims 1 and 18-20 were
> rejected on the ground of non-statutory
> obviousness-type double patenting and allowed
> based on an ineffective, invalid terminal
> disclaimer. The allowance of issued claims 1 and
> 18-20 [sic, 1, 16, 17, and 21] based on the original
> [application] claims 1 and 18-20 was in error.

'662 Appl., Reissue Application Declaration by the

Assignee dated Oct. 27, 2009.

10. A week prior to filing the Amendment and Response,

Appellants had filed a Petition "to substitute the incorrect

terminal disclaimer with a correct terminal disclaimer." '662

Appl., Petition Under 37 CFR 1.175(a)(1) and Section 1490

VII.(b) of the MPEP dated Oct. 20, 2009 ("First Petition").

11. The Petition was accompanied by an Exhibit consisting of an

unsigned Terminal Disclaimer proposing to disclaim the

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

terminal part of the statutory term of any patent granted on the '662 Appl. which would extend beyond the expiration date of the full statutory term of Dinsmore, but omitting the statement agreeing that any patent so granted on the instant application shall be enforceable only for and during such period that it and Dinsmore are commonly owned. First Petition, Exhibit.

12. The Office dismissed Appellants' Petition stating that "[n]o authority exists for withdrawal of [the co-ownership] provision which the public is justified in relying upon." '662 Appl., Decision on Petition dated Mar. 10, 2011, at p. 2.

13. The Examiner thereafter issued a second non-final Office Action rejecting all of the pending claims under 35 U.S.C. § 251 as being based upon a defective reissue declaration. '662 Appl., Second Office Action dated Apr. 4, 2011.

14. Appellants filed a response to the Office Action accompanied by a renewed Petition for acceptance of the substitute terminal disclaimer, which the Office again dismissed. Amendment and Response Under 37 CFR 1.111 and Request for Reconsideration of Dismissal of Petition Under 37 CFR 1.182 dated May 10, 2011 and Decision on Petition dated June 15, 2011.

15. Appellants then filed another request for reconsideration of the petition which the Office denied. Second Request for

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

Reconsideration of Dismissal of Petition Under 37 CFR 1.182
dated July 15, 2011 and Decision on Petition dated Sept. 7,
2011.[5]

16.  The Examiner then issued a Final Office Action rejecting all of
the pending claims under 35 U.S.C. § 251 as being based upon
a defective reissue declaration. '662 Appl., Third Office Action
dated Sept. 29, 2011.

17.  Appellants filed a Request for Continued Examination
accompanied by an amendment canceling all the pending
claims and adding claims 26-46 and a substitute reissue
declaration. Request for Continued Examination dated Jan. 30,
2012.

18.  The substitute reissue declaration stated the original patent "to
be wholly or partly inoperative or invalid . . . by reason of the
patentee claiming more or less than he had the right to claim in
the patent" and identified the error on which the reissue is based
as follows:

> Original [application] claims 1 and 18-20
> were rejected on the ground of non-statutory
> obviousness-type double patenting and allowed

---

[5] This Decision on Petition stated that "[t]his decision may be viewed as a
final agency action within the meaning of 5 U.S.C. § 704 for purposes of
seeking judicial review." Decision on Petition dated Sept. 7, 2011 at p. 7.
To our knowledge, Appellants did not seek review of this final Decision of
the Office.

A-8

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

> based on an ineffective, invalid terminal
> disclaimer. The invalid terminal disclaimer
> renders the patent unenforceable. The patentee
> presents narrower claims based on claims that
> were not rejected on that basis.

'662 Appl., Reissue Application Declaration by the Assignee,
dated Jan. 30, 2012.

19. The Examiner rejected claims 26-46 under 35 U.S.C. § 251 as
    based upon a defective reissue declaration because (1) the error
    relied upon to support the reissue application is not an error
    upon which a reissue can be based and (2) the declaration does
    not identify which claims are in error and why and does not
    identify the error in the claims by identifying the narrowing
    limitations. Fourth Office Action dated Feb. 14, 2012, at
    pp. 2-4.

20. Appellants responded to the Office Action by filing a signed
    copy of the substitute Terminal Disclaimer previously presented
    for review with Appellants' Petition. Amendment and
    Response dated May 14, 2012.

21. The Examiner entered a Final Office Action again rejecting
    claims 26-46 on the same grounds as in the Fourth Office
    Action and refusing to enter the substitute terminal disclaimer.
    Fifth Office Action dated May 30, 2012.

22. Appellants responded with an Amendment After Final seeking
    to have entered a substitute Reissue Application Declaration.

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

                    Amendment and Response to Final Office Action dated Sept. 19, 2012.

23.    The Examiner refused to enter the After-Final Amendment or consider the substitute Reissue Declaration. Advisory Action dated Oct. 4, 2012.

24.    Appellants subsequently filed another substitute Reissue Application Declaration, which the Examiner refused to enter or consider. Reissue Application Declaration by the Assignee dated Oct. 11, 2012 and Advisory Action dated Jan. 10, 2013.

25.    Appellants appealed to the Board from the Final (Fifth) Office Action. Notice of Appeal dated Sept. 25, 2012.

26.    As such, the rejection before us for review is the Examiner's final rejection dated May 30, 2012 of claims 26-46 under 35 U.S.C. § 251 as being based upon a defective reissue declaration (i.e., the Reissue Application Declaration dated January 30, 2012).

PRINCIPLES OF LAW

Section 251 of title 35, United States Code, first paragraph, provides that:

> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251 (2006).[6]

While § 251 is "based on fundamental principles of equity and fairness, and should be construed liberally," *In re Weiler*, 790 F.2d 1576, 1579 (Fed. Cir. 1986), the remedial function of the statute is not without limits. *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323 (Fed. Cir. 2007). Indeed, "[t]he reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute *de novo* his original application." *Weiler*, 790 F.2d at 1582. Thus, "not every event or circumstance that might be labeled 'error' is correctable by reissue." *Id.* at 1579.

"[The Federal Circuit's] case law holds that the deliberate action of an inventor or attorney during prosecution generally fails to qualify as a correctable error under § 251." *In re Serenkin*, 479 F.3d 1359, 1362 (Fed. Cir. 2007) (holding that Serenkin cannot rely on the reissue statute, in light

---

[6] In a recent decision, the Federal Circuit held that 35 U.S.C. § 251 cannot be used to withdraw a terminal disclaimer from an issued patent. *In re Yamazaki*, 702 F.3d 1327, 1333 (Fed. Cir. 2012). In *Yamazaki*, the Patentee attempted to extend the term of the original patent by removing the terminal disclaimer that the Patentee inadvertently failed to have withdrawn prior to issuance of the patent. *Id.* The court in *Yamazaki* held that the "term of the original patent" is set at the time of issuance so that the Office is not permitted under 35 U.S.C. § 251 to reissue a patent for a longer term. *Id.*

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

of a belated decision that he should have retained the original filing date, in order to undo the consequences of his attorney's deliberate choice of selecting the drawings over the original international filing date in response to the PCT examiner's requirement). The court in *Serenkin* explained:

> Our predecessor court, the Court of Customs and Patent Appeals, so held in *In re Mead*, 581 F.2d 251 (CCPA 1978). In that case, the inventor's attorney made the deliberate choice of not filing a continuing application during the pendency of the parent application in order to cover subject matter that was disclosed, but not claimed, in the original application. Although he may have had the intention of filing a subsequent application to cover that subject matter within the applicable one-year statutory bar period, in the interim he discovered intervening prior art that was capable of defeating patentability of that subject matter unless he was able to claim priority from the parent application. The court held that the inventor could not rely on § 251 to correct that purported error. Notably, the court stated:
>
> > When his attorney made the conscious choice of breaking appellant's chain of copendency by letting the application issue, with the plan to claim in the subsequent application, he knew, or should have known, that there could exist intervening references ... which could defeat patentability of the disclosed but unclaimed subject matter in the original patent. That intentional omission of the appealed subject matter from the original application combined with the plan to claim it in the subsequent application, does not constitute "error" under § 251 because to permit appellant to use the reissue statute in this manner would defeat

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

> the purpose behind the copendency requirement of
> § 120 of the statute.

*Id.* at 257 (emphasis added).

Similarly, in *In re Orita*, 550 F.2d 1277 (CCPA 1977), the Court of Customs and Patent Appeals found that the reissue applicant failed to establish error under § 251. The *Orita* inventor filed two sets of claims-the first involving compound and process claims, the second involving coating and emulsion claims-in one application. The examiner required restriction between the two sets of claims. The inventor's counsel elected the first set, and authorized the cancellation of the non-elected claims. The attorney, however, failed to subsequently file a timely divisional application covering the non-elected claims. The inventor then filed a reissue application, arguing that the failure to file a divisional application was a correctable error under § 251. The court disagreed, holding that the error did not cause "the original patent to be 'partially inoperative by reason of the patentee claiming less that he had a right to claim in the patent.' " *Id.* at 1280. The court noted that the inventor "acquiesced in the examiner's requirement for restriction," and therefore failed to establish a correctable error. *Id.* Moreover, the court reasoned that if the inventor prevailed, the copendency requirement would be rendered meaningless. *Id.* at 1280-81.

*In re Serenkin*, 479 F.3d at 1362-63.[7] The court in *Serenkin* noted "the

distinction [in the law on errors correctable by reissue] between a genuine

---

[7] *See also In re Watkinson*, 900 F.2d 230, 231 (Fed. Cir. 1990) (holding that applicant's acquiescence in restriction requirement in the original patent application and failure to file a divisional application directed to the non-elected claims was not an error correctable by reissue under 35 U.S.C. § 251); *In re Weiler*, 790 F.2d 1576, 1582 (Fed. Cir. 1986) (holding that applicant's acquiescence in restriction requirement in the original patent application and failure to file a divisional application directed to the non-

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

error, or mistake, and a deliberate, but subsequently found to be
disadvantageous, choice." *Id.* at 1364.

ANALYSIS

The deliberate action of Appellants' attorney during prosecution to
file a terminal disclaimer to overcome the non-statutory obviousness-type
double patenting rejection fails to qualify as a correctable error under § 251.
Appellants' counsel did not mistakenly file the terminal disclaimer. Rather,
Appellants' counsel acquiesced in the Examiner's double patenting rejection
and intentionally filed the terminal disclaimer to overcome the rejection
(Facts 2, 3). The fact that Appellants now find this choice to be
disadvantageous to the enforceability of the patent does not constitute
"error" under § 251. *In re Serenkin*, 479 F.3d at 1364.

Appellants assert in their reissue declaration that original application
claims 1 and 18-20 were "allowed based on an ineffective, invalid terminal
disclaimer" (Fact 18). We disagree with Appellants' characterization of the
allowance of original application claims 1 and 18-20. Appellants agreed in
the terminal disclaimer "that any patent so granted on the instant application
shall be enforceable only for and during such period that it and [Dinsmore]
are commonly owned" (Fact 3). The terminal disclaimer is akin to a
contract in which Appellants agreed that the '568 patent is unenforceable
unless commonly owned with Dinsmore. The Office allowed original

---

elected claims foreclosed applicant's right to claim that subject matter
because applicant's actions were not errors under 35 U.S.C. § 251).

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

application claims 1 and 18-20 based on the promise made by Appellants in the terminal disclaimer not to enforce the '568 patent unless it is commonly owned with Dinsmore. The fact that the '568 patent and Dinsmore are not now, nor have they ever been commonly owned, does not somehow render the promise made by that terminal disclaimer ineffective or invalid. On the contrary, the promise made by Appellants in the terminal disclaimer serves the exact purpose for which terminal disclaimers were intended, *viz.*, to prevent multiple infringement suits by different assignees asserting essentially the same patented invention. *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013) (citing *In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009)).

Appellants argue that they are permitted, under the Federal Circuit's recent decision in *In re Tanaka*, 640 F.3d 1246 (Fed. Cir. 2011), to file narrower claims "as a hedge against unenforceability." App. Br. 6. We find the facts and holding of *Tanaka* inapplicable to the appeal now before us. In *Tanaka*, the Patentee sought to reissue a patent to include all of the original patent claims and to add a single narrower dependent claim as a hedge against invalidity of the broader patent claims. The Board held that such a reissue application did not present the type of error correctable by reissue within the meaning of 35 U.S.C. § 251 because the reissue application proposed to retain all of the original patent claims, and thus the Patentee had not properly averred that the original patent was "wholly or partly inoperative or invalid." *Id.* at 1248. The Federal Circuit disagreed with the

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

Board's reading of 35 U.S.C. § 251, holding that it was bound by the
doctrine of *stare decisis* because in its view "the narrow rule relating to the
additional of dependent claims as a hedge against possible invalidity has
been embraced as a reasonable interpretation of the reissue statute by this
court and its predecessor for nearly fifty years without any obvious adverse
consequences." *Id.* at 1252-53.

   The facts before us differ from the facts in *Tanaka* in two important
aspects. First, Appellants in the reissue application on appeal have *canceled
the original patent claims* and presented what they assert to be narrower
claims. Thus, the issue before the Board is not the same as the issue before
the court in *Tanaka*. To be clear, the Board is not interpreting 35 U.S.C.
§ 251 to disallow the substitution of narrower claims in place of broader
patent claims in a reissue. We recognize that substitution of narrower claims
in place of broader claims is generally allowed in a reissue application. The
substitution of the broader claims with narrower claims does not, however,
vacate or otherwise nullify the voluntary terminal disclaimer filed by
Appellants in the original patent. As such, any reissue patent issuing from
the present application would be subject to the original terminal disclaimer,
and thus, absent co-ownership with Dinsmore, would render any such
reissue patent unenforceable.

   Second, the patentee in *Tanaka* sought to add a narrower claim as a
hedge against *invalidity* of the broader claims. We disagree with
Appellants' characterization of the court's holding in *Tanaka* as authorizing

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

the addition of narrower claims in order to vacate a voluntarily filed terminal disclaimer as a hedge against *unenforceability*. Appellants' extension of the holding in *Tanaka* to permit the use of a reissue proceeding to cure unenforceability of a patent finds no support in *Tanaka*. Further, in other instances, the Federal Circuit has held that reissue proceedings are not available to cure unenforceability of a patent. *See, e.g., Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (en banc) ("Unlike other deficiencies, inequitable conduct cannot be cured by reissue . . . or reexamination. . . .") (internal citations omitted).

Because Appellants' voluntarily and intentionally filed a terminal disclaimer to overcome the non-statutory obviousness-type double patenting rejection during prosecution of the original patent application, the filing of such terminal disclaimer is not an error correctable by reissue. Accordingly, we sustain the Examiner's rejection of claims 26-46 under 35 U.S.C. § 251 as being based on a defective reissue declaration as failing to state an error correctable by reissue.

## CONCLUSION

Appellants' voluntary and intentional filing of a terminal disclaimer to overcome a non-statutory obviousness-type double patenting rejection during prosecution of the original patent is not an "error" correctible by reissue under 35 U.S.C. § 251.

## DECISION

We AFFIRM the decision of the Examiner to reject claims 26-46.

Appeal 2013-006879
Patent US 7,236,568 B2
Application 12/137,662

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a). *See* 37 C.F.R. § 1.136(a)(1)(iv).

AFFIRMED

hh

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2013, I electronically filed the Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Serial No. 12/137,662 with the United States Court of Appeals for the Federal Circuit by using the CM/ECF system, which will automatically send email notification of such filing to all registered attorneys of record.

I further certify that on November 1, 2013, I served one copy of the foregoing document by e-mail and will serve two copies of the foregoing document on November 8, 2013, on the following counsel of record by U.S. mail:

> United States Patent and Trademark Office
> P.O. Box 1450, Mail Stop 8, Office of the Solicitor
> Alexandria, VA 22313-1450

> /s/Orlando Lopez
> Orlando Lopez

4836-0545-7430.1

**Form 19**

FORM 19.  Certificate of Compliance With Rule 32(a)

---

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

    1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

    ☑    The brief contains [    *4217*    ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

    ☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

    2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

    ☑    The brief has been prepared in a proportionally spaced typeface using [    *Microsoft WORD 2007*    ] in [    *Times New Roman  Font size14*    ], or

    ☐    The brief has been prepared in a monospaced typeface using [ *state name and version of word processing program* ] with [ *state number of characters per inch and name of type style* ].

_____
(Signature of Attorney)

Orlando Lopez
_____
(Name of Attorney)

Attorney for Appellant
_____
(State whether representing appellant, appellee, etc.)

November 1st, 2013
_____
(Date)

142